## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFF HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | CASE NO. CIV-23-265-J |
| OKLAHOMA DEPARTMENT OF | ) | |
| CORRECTIONS and JOSH WARD, | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO DISMISS

COME NOW Defendants, the Oklahoma Department of Corrections and Josh Ward, sued in his official capacity, to file this motion to dismiss based on sovereign immunity and failure to state a claim upon which relief may be granted. In support of this motion, Defendants submit the following:

### PLAINTIFF'S ALLEGATIONS

Plaintiff Jeff Hood filed this lawsuit on March 24, 2023, alleging claims against the State of Oklahoma ("ODOC") and Josh Ward in his official capacity. Doc. 1. He claims that he is a resident of Arkansas and an ordained Catholic priest. Doc. 1, ¶ 4. He alleges he became the spiritual advisor to ODOC death row inmate Scott Eizember sometime in the Fall of 2022. Doc. 2, ¶ 9-14. Later, Hood agreed to accompany Eizember into the execution chamber as his minister. Doc. 1, ¶ 16. He claims that he went through a background check with ODOC where they learned about his past 3 "minor arrests." Doc. 1, ¶ 17. Plaintiff alleges that ODOC labeled him a security threat and decided they would not allow him into the execution chamber. Doc. 1, ¶ 18. He alleges that in response to that denial, a grassroots campaign was initiated to force ODOC to change that decision. Doc. 1, ¶ 19. Plaintiff claims that in response to that televised campaign, Defendant

Ward released the following statement:

> "Out of respect for the families of the victims, ODOC will not allow the outbursts of activists to interfere, regardless of that activist's declared role in this process. . . . The spiritual advisor in this case has been arrested multiple times for such outbursts in other states, demonstrating a blatant disregard for the experiences of victims' families and the solemnity of the process."

Plaintiff claims that statement was false and ODOC knew it was false when it was made. Doc. 1, ¶ 19-20.  The statement does not say anything about Hood being a "security threat." It merely states that ODOC did not want the execution to be disrupted.  Hood was eventually permitted to serve as Eizember's spiritual advisor during the execution. Therefore, paragraph 18 in the Complaint is false. *See* Fed. R. Civ. P. 11(b)(3).

The Complaint alleges those factual allegations are: (1) Defamation *per se*; (2) Conspiracy in violation of 42 U.S.C. § 1985; (3) violated his First Amendment "free exercise rights"; and (4) violated of his Due Process rights. He asks this Court to award him money damages against ODOC and Ward, in his official capacity.

## MOTIONS TO DISMISS AND *TWOMBLY* STANDARD

Pursuant to FRCP Rule 12(b)(6) a Court should dismiss a Complaint when it is "fatally flawed in [its] legal premises [and] destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993). The mere "possibility" that a claim may exist is not sufficient.  The United States Supreme Court has interpreted Federal Rule 12(b)(6) in conjunction with Federal Rule 8, as requiring "a short and plain statement of the claim **showing** that the pleader is entitled to relief," in order to "give the defendant **fair notice** of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)(emphasis added); *see also Nelson v. Adams USA, Inc*., 529 U.S. 460, 465 (2000) ("The

Federal Rules of Civil Procedure are designed to further the **due process of law** that the Constitution guarantees."(emphasis added)).

Federal Rule of Civil Procedure- Rule 8 is a pleading requirement that serves two purposes: First, it ensures that defendants know "the actual grounds of the claim against them," and can therefore prepare a defense. *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008); *Twombly*, 550 U.S. at 570.  Second, it "avoid[s] ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Id*. "[I]f the complaint is sufficiently devoid of **facts** necessary to establish liability that it encompass[es] a wide swath of conduct, much of it innocent, a court must conclude that plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Bryson*, 534 F.3d at 1286 (quoting *Twombly*, 127 S.Ct. at 1974)(emphasis added).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Twombly* at 555.  Nor does a complaint suffice if it tenders "naked assertions[s]" devoid of "factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it **has not 'show[n]'**—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. (quoting Fed. Rule Civ. Proc. 8(a)(2))(emphasis added). The Court "need not speculate, because the burden rests on the plaintiffs to provide **fair**

**notice** of the grounds for the claims made against **each** of the defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Plaintiff has failed to allege a cognizable claim for relief in his Complaint.  His factual allegations do not meet the definition of defamation, nor any violation under federal law or the Constitution. The named Defendants are not "persons" under § 1983 and the 10th and 11th Amendments prohibit this Court from exercising any jurisdiction over the Defendants. Therefore, this Court must dismiss Defendants from this lawsuit.

## THE OKLAHOMA DEPARTMENT OF CORRECTIONS and WARD MUST BE DISMISSED

Defendants ODOC and Ward, sued in his *official capacity*, must be dismissed pursuant to the 10th and 11th Amendments. U.S. Const.  A state officer named in his *official capacity* is the same as suing the State itself, and as such, cannot be sued in federal court for money damages. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).  The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.  That Amendment bars suits for damages against a state in federal court, absent a waiver of immunity by the state. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Nevada Dept. Of Human Resources v. Hibbs*, 538 U.S. 721, 726 (2003)(Eleventh Amendment bars private lawsuits in federal courts against unconsenting states and their agencies).

There are exceptions to that general rule.  The State may expressly waive its sovereign immunity, or Congress may override it. *Kentucky v. Graham*, 473 U.S. at 169. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against the State in federal court." *Id*. Here, Congress has not overridden that immunity, and the

State of Oklahoma has expressly refused to waive Eleventh Amendment immunity from liability or otherwise consent to federal jurisdiction in such lawsuits against the state, any state agency, or a state employee.  Title 51 O.S. § 162(E) of the Oklahoma Statutes sets forth in relevant part:

> Nothing in this section shall be construed to waive any immunities available to the state under the terms of the Eleventh Amendment to the Constitution of the United States.  Any immunity or other bar to a civil lawsuit under state or federal law shall remain in effect.

Therefore, the State of Oklahoma has not waived is sovereign immunity under the Eleventh Amendment, and all state and federal law claims against it and Ward must be dismissed. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir.2006) (Eleventh Amendment immunity extends to state law claims).

Likewise, 42 U.S.C. § 1983 and § 1985 do not create substantive rights but serve only as remedial statutes for violations of rights secured elsewhere in the constitution. *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 977 (10th Cir.1991); *see also Patillo v. Larned State Hospital*, 462 F.App'x 780, 783 (10th Cir. 2012)(affirming dismissal of claims against state entities on the grounds that their immunity "had not been abrogated or waived in connection with §§ 1981, 1983, 1985, or 1986."); *Ash v. Buttigieg*, 2022 WL 17225732, at *2 (recognizing that "claims brought under RICO and 42 U.S.C. § 1985(3) for damages against government officials require a waiver of sovereign immunity").

When determining whether a complaint in a § 1983 action may proceed, the district court must first consider the question whether the complaint states a viable cause of action.  *Wilson v. Layne*, 526 U.S. 603 (1999); *Twombly*, 550 U.S. at 570 (requiring **sufficient <u>factual</u> allegations** for a ***plausible claim***). An actionable claim for relief under § 1983 requires a plaintiff to plead (1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by

a "**person**" under color of state law.  *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

 Neither a State nor its agencies, such as ODOC, nor its officers sued officially, are "**persons**" under 42 U.S.C. § 1983,  and therefore cannot be sued under that statute. *See Will v. Michigan State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68-69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(noting that § 1983 actions do not lie against the state); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003)(stating that suits for damages against states should be dismissed because the states are not persons under § 1983, and because the states are protected by the Eleventh Amendment; any constitutional problem that may exist is subordinate to that statutory deficiency); *Stidham v. Peace Officers Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2003)(States are not persons under § 1983); *Lapides v. Board of Regents*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)(States and their agencies are not "persons" for purposed of § 1983)).  Therefore, this Court must dismiss Plaintiff's Complaint [Doc. 1] against the State, its agency Defendant ODOC, and its *officially* sued officer Defendant Ward because Plaintiff has not alleged any cognizable constitutional violation against a "person."

## **CONCLUSION**

 This Court must dismiss Plaintiff's Complaint against the named Defendants pursuant to the 10th and 11th Amendments of the Constitution and because they are not "persons" under 42 U.S.C. § 1983 nor § 1985.

      Respectfully submitted,

       /s/Kevin L. McClure
      **KEVIN L. MCCLURE, OBA #12767**
      **KATIE A. WILMES, OBA #33642**
      Assistant Attorneys General

Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK  73105
Telephone:    (405) 521-3921
Facsimile:    (405) 521-4518
Email: kevin.mcclure@oag.ok.gov
        katie.wilmes@oag.ok.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert D. Gifford
GIFFORD LAW, PLLC
P.O. Box 2682
Oklahoma City, OK 73101
Robert.gifford@giffordlawyer.com
*Attorney for Plaintiff*

/s/Kevin L. McClure
Kevin L. McClure

KeyCite Yellow Flag - Negative Treatment

Affirmed and Remanded by  Patillo v. Larned State Hosp.,  10th Cir.(Kan.), January 30, 2012

2011 WL 2173691

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Mary PATILLO, Plaintiff,

v.

LARNED STATE HOSPITAL, et al., Defendants.

No. 09–2545–EFM.

|

June 2, 2011.

**Attorneys and Law Firms**

Mary Patillo, Spring Hill, KS, pro se.

**MEMORANDUM AND ORDER**

ERIC F. MELGREN, District Judge.

**\*1** Presently before the court is defendant Kansas Human Rights Commission's motion to dismiss (Doc. 59) and a joint motion to dismiss party defendants John Badger, Kerri Barnard, Shari Campbell, Stacey Clark–Paige, Department of Social and Rehabilitative Services (SRS), Adele Dunn, Donald Jordon, Mark Schutter, and Transitional House Services (the SRS Defendants) (Doc. 63). For the following reasons, the court grants both motions.

**I. Background**

Plaintiff Mary Patillo initially filed a *pro se* complaint against Larned State Hospital (LSH) on October 21, 2009. Defendant LSH filed a motion to dismiss on January 6, 2010, which this court granted in part and denied in part, while giving Plaintiff leave to file an amended complaint regarding her Title VII claims.

Plaintiff filed that *pro se* amended complaint, alleging various claims under the federal anti-discrimination statutes. Plaintiff's amended complaint is difficult to understand. Her complaints seems to arise from her employment with the state of Kansas at the Transition House Services. Plaintiff has

primarily sued SRS, its subdivisions, officers and employees for various things arising from her employment at SRS. Nearly nine months after filing her initial complaint, she named additional defendants for the first time. Plaintiff claims the defendants "violated her constitutional rights through a campaign of continuing unlawful employment practices and patterns, [and] race discrimination...." [1] Her action is apparently primarily one for employment discrimination under the "Kansas Act Against Discrimination, Title VII of the Civil Rights Act of 1964, [42 U.S.C .] Sec.1981, 1983, 1985(1) and (2), 1985(3), 1986 ... and the Fair Labor Standards Act". Several defendants now move for a motion to dismiss. [2]

**II. Standards**

**Rule 12(b)(1) Standard**

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." [3] "A case arises under federal law if its 'well pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " [4] Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper. [5] Mere allegations of jurisdiction are not enough. [6]

Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction. [7] The law imposes a presumption against jurisdiction, and plaintiff bears the burden of showing that jurisdiction is proper. [8]

**Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " [9] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." [10] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." [11]

**\*2** In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense. [12] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff. [13] Allegations that merely state legal conclusions, however, need not be accepted as true. [14]

#### Rule 12(c) Standard
The distinction between Fed.R.Civ.P. 12(c) and Fed.R.Civ.P. 12(b)(6) is one without difference, as the standards under the two provisions are the same. [15] Thus, to survive a motion to dismiss made under Rule 12(c), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." [16] The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. [17]

#### Pro Se Standard
"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." [18] However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." [19] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." [20]

### III. ANALYSIS

#### 1. Immunity
The KHRC and the SRS defendants argue that Plaintiff's claims under 42 U.S.C. § 1983 and any related statutes are precluded by the Eleventh Amendment. This court agrees. The Eleventh Amendment bars private parties from suing an unconsenting state in federal court unless Congress has unequivocally abrogated the state's constitutional sovereign immunity or unless the state has waived the immunity. [21] Eleventh Amendment immunity extends to state agencies. [22] KHRC and SRS are state agencies and thus immune from

plaintiff's claims. [23] Likewise, the Supreme Court has made it clear that the KHRC, SRS, and the Transitional House Services are not a person for purposes of 42 U.S.C. § 1983 liability. [24] Accordingly, all of Plaintiff's claims pursuant to § 1983 liability are dismissed.

#### 2. Personal Participation
"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." [25] The doctrine of respondeat superior does not apply, so a litigant may not obtain relief from an official based solely on his or her capacity as a supervisor or right to control employees. [26] Rather, "the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." [27]

Plaintiff lists several defendants individually in the caption of her amended complaint. In the body of her amended complaint, however, she alleges no facts showing any of the named defendant's personal participation in the alleged violation of her constitutional rights. Rather, Plaintiff generally complains about a variety of perceived injustices at her job. Accordingly, plaintiff's claims against the named defendants are dismissed for failure to allege facts showing personal participation.

#### 3. Employment Discrimination and Wage and Hour Claims
**\*3** Title VII and Fair Labor Standards Act only apply to the employment relationship. [28] Similarly, the Kansas Act Against Discrimination's prohibitions on discrimination in employment only apply to the employer/employee relationship. The KHRC and the individual defendants were never Plaintiff's employer. As such, any of Plaintiff's claims that can be construed as raising allegations of discrimination and improper wage payment against the KHRC and the individual defendants are dismissed. [29]

#### 4. The KHRC's No Cause Finding
The KHRC argues that Plaintiff's complaint that the KHRC returned unfavorable answers to her complaints of employment discrimination must be dismissed because it can be construed as an attempt to collaterally attack the KHRC's no cause determinations on her complaints of discrimination.

This court agrees. It is well-established that a KHRC no-cause determination is not subject to judicial review.[30] Rather, a complainant who is dissatisfied with a KHRC no-cause finding has a right to bring a direct action against his or her employer under the KAAD.[31] Indeed, Plaintiff has done just that by brining a direct action against her employer, SRS. As such, Plaintiff's claim against KHRC must be dismissed.

### 5. The KHRC's Investigation

Plaintiff also appears to allege that the KHRC failed to stop the employment discrimination she allegedly faced and further appears to collaterally attack the settlement agreement she entered with SRS and the KHRC. As with the challenge to the no-cause finding discussed above, these claims must fail.

It is well established that a state agency, such as the KHRC is not liable when parties are dissatisfied with either the nature of the investigation or the outcome of that investigation.[32] Indeed, it was the KHRC's handling and investigation of her complaint and the subsequent exhaustion of the administrative process that provided Plaintiff the right to bring an action against her employer. It would be rather odd that the very investigative activity and resolutions that perfected Plaintiff's right to bring suit against her employer for employment discrimination would also somehow constitute a violation of some unnamed and unexplained right.

Second, to the extend that Plaintiff believes that the settlement agreement has been breached, her appropriate remedy would be to request the KHRC to bring suit to enforce the agreement or to bring her own action for breach of contract in state court. Plaintiff has done neither, and instead seems to allege that the KHRC has violated some unnamed legal principal in failing to enforce the settlement agreement. Nothing in any of the various statutes or causes of action cited by Plaintiff would allow a federal claim or jurisdiction over such a state law claim against the KHRC.

Finally, to the extent that Plaintiff refers to other causes of action, she has failed to explain how any of her claims apply to the facts she has alleged. Further, Plaintiffs claim that the KHRC is liable for its alleged failure to "make the terrible abuse stop" must fail because courts have generally rejected arguments that the Constitution imposes affirmative obligations on the government to assist its citizens.[33]

### 6. Exhaustion of Administrative Remedies

**\*4** A plaintiff must exhaust her administrative remedies before pursuing a Title VII claim in federal court.[34] In the Tenth Circuit, failure to exhaust administrative remedies is a jurisdictional bar to filing suit in federal court.[35] Here, Plaintiff's amended complaint does not demonstrated that she has exhausted her administrative remedies. Accordingly, her Title VII claims must be dismissed for failure to exhaust her administrative remedies.

### 7. The Un–Served Defendants

Two defendants, Shelly Blann and Joyce Hammond–Perry, did not submit motions to dismiss because they were not served.[36] Pursuant to Rule 4(m), a defendant must be served within 120 days after the complaint is filed. Here, the amended complaint was filed on July 14, 2010. Almost one year later, these two defendants have not been served. As such, the case is dismissed *sua sponte,* without prejudice, against these two defendants.

### IV. CONCLUSION

In conclusion, The Tenth Circuit has noted that a sua sponte dismissal "is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."[37] Such is the case here. As such, for the reasons stated above, all of Plaintiff's claims are dismissed in their entirety.

**IT IS THEREFORE ORDERED** that defendant Kansas Human Rights Commission's motion to dismiss (Doc. 59) and the SRS defendant's joint motion to dismiss the SRS Defendants) (Doc. 63) are hereby GRANTED.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2011 WL 2173691

**Footnotes**

1      Amended Complaint (Doc. 38) ¶ 1.

2      Defendants Shelly Blann and Joyce Hammond–Perry have not been served yet (Docs 48 & 49) and thus have not filed a motion to dismiss.

3      28 U.S.C. § 1331.

4      *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1232 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28 (1983)).

5      *United States v. Rockwell Int'l Corp.,* 282 F.3d 787, 797 (10th Cir.2002).

6      *Id.* at 798.

7      *Lindstrom v. United States,* 510 F.3d 1191, 1193 (10th Cir.2007).

8      *See, e.g., Merida Delgado v. Gonzales,* 428 F.3d 916, 919 (10th Cir.2005).

9      *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

10      *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007).

11      *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir.2003).

12      *Iqbal,* 129 S.Ct. at 1950.

13      *See Zinermon v. Burch,* 494 U.S. 113, 118 (1990); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984).

14      *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

15      *See Ward v. Utah,* 321 F.3d 1263, 1266 (10th Cir.2003); *Cont'l Coal, Inc.,* 511 F.Supp. at 1070.

16      *Twombly,* 550 U.S. at 555.

17      *Robbins v. Oklahoma,* 519 F.3d 1242, 1247–48 (10th Cir.2008).

18      *Hall,* 935 F.2d at 1110.

19      *Id.*

20      *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

21      *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238–40 (1985); *Sturdevant v. Paulsen,* 218 F.3d 1160, 1164 (10th Cir.2000).

22    *Ross v. Bd. of Regents of the Univ. of New Mexico,* 599 F.3d 1114, 1117 (10th Cir.2010).

23    *See Smith v. Kansas,* 574 F.Supp.2d 1217, 1220 (D.Kan.2008) (dismissing complaint against KHRC due to Eleventh Amendment immunity).

24    *See* *Smith v. Cummings,* 445 F.3d 1254, 1259 (10th Cir.2006) ( *section 1983* does not authorize suits against states) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71) (1989)); *McLaughlin v. Bd. of Trustees of State Colleges of Colorado,* 215 F.3d 1168 (10th Cir.2000).

25    *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir.1997).

26    *Se Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir.2000).

27    *Fogarty v. Gallegos,* 523 F.3d 1147, 1527 (10th Cir.2008).

28    *See* 42 U.S.C. § 2000e–2(a)(1), 29 U.S.C. § 203(d) & (e); *Bartell v. U.S. Equal Emp't Opportunity Comm'n,* 2002 WL 31958717 (W.D.N.C. March 29, 2002) (finding Title VII did not grant federal court jurisdiction to hear a "claim against the EEOC in its capacity as an enforcement agency").

29    *Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1083 n .9 (10th Cir.2007) ("Under long-standing [Tenth] Circuit precedent, supervisors and other employees may not be held personally liable under Title VII.").

30    *Bush v. City of Wichita,* 576 P.3d 1071, 1078 (Kan.1978) (rejecting a complainant's attempt to appeal the then-Kansas Commission on Civil Rights no cause determination.

31    *Van Scoyk v. St. Mary's Assumption Parochial Sch.,* 224 Kan. 304 (1978).

32    *See Nuno v. Campbell,* 5 F.3d 538 (9th Cir.1993)(upholding dismissal of lawsuit against EEOC investigator for alleged failure to conduct a proper investigation); *Cortez v. Wright,* No. 06–1198, 2008 WL 4104133 (D.N.M. April 29, 2008)(granting summary judgment on claims against EEOC investigator by dissatisfied complainant); *Medina v. District of Columbia,* 517 F.Supp.2d 272 (D.D.C.2007)(finding no due process violations under *Section 1983* based on allegation that District of Columbia agencies failed to follow District of Columbia law in the investigation of complainant's discrimination charges); *Bartell v. U.S. EEOC.,* No. 00–453, 2002 WL 31958717 (W.D. N. Carolina March 29, 2002) (dismissing negligence and discrimination claims filed by dissatisfied complainants against EEOC for lack of subject matter jurisdiction); *Stewart v. EEOC,* No. 75–4069, 1978 WL 92 (N.D. Ill. June 21, 1978)(dismissing claims due process and other claims filed by dissatisfied complainant against EEOC).

33    *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.,* 489 U.S. 189 (1989) (finding the state has no affirmative constitutional duty to protect individuals from harm absence a special relationship); *Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748, 766 (2005) (finding no liability for town's failure to enforce civil restraining order based in part on statutory grant of authority to protected person to initiate contempt proceedings against the restrained person).

34    *Jones v. UPS, Inc.,* 502 F.3d 1176, 1183 (10th Cir.2007).

35  🚩 *Jones v. Runyon,* 91 F.3d 1398, 1399 n. 1 (10th Cir.1996).

36  Docs 48 & 49.

37  *McKinney v. State of Okla. Dep't of Human Servs.,* 925 F.2d 363, 365 (10th Cir.1991).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by **ASH v. BUTTIGIEG, ET AL,** 10th Cir., November 22, 2022

2022 WL 17225732
Only the Westlaw citation is currently available.
United States District Court, W.D. Oklahoma.

Julian ASH, Plaintiff,

v.

Pete BUTTIGIEG, Secretary of the U.S. Department of Transportation, et al., Defendants.

No. CIV-22-371-R
|
Signed October 24, 2022

**Attorneys and Law Firms**

Julian Ash, Lutherville, MD, Pro Se.

Erika Kirstie Oblea, DOJ-USAO, Washington, DC, Rebecca A. Frazier, U.S. Attorney's Office, Oklahoma City, OK, for Defendants.

## ORDER

DAVID L. RUSSELL, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendants' Motion to Dismiss (Doc. No. 29), Plaintiff's Motion for Summary Judgment & Response for Motion to Dismiss (Doc. No. 30), Defendants' Motion to Strike Plaintiff's Motion (Doc. No. 31), "Plaintiff's Opposition for Motion to Strike" (Doc. No. 32), "Plaintiff's Response for Motion to Dismiss" (Doc. No. 33), Plaintiff's Motion for Summary Judgment (Doc. No. 34), Defendants' Reply in Further Support of their Motion to Strike (Doc. No. 35), and Defendants' Reply in Support of their Motion to Dismiss (Doc. 36). Upon consideration of the parties' filings, the Court GRANTS Defendants' Motion to Dismiss (Doc. No. 29) and DENIES all subsequently filed motions (Doc. Nos. 30-36).

On or about December 1, 2018, Plaintiff Julian Ash resigned from his position as a Human Resources Specialist at the Federal Aviation Administration ("FAA") in Oklahoma City, Oklahoma. He filed this action in the District of Columbia, *pro se*, seeking damages for alleged employment discrimination and retaliation based on his race, color, sex, age, and disabilities. [1] (Doc. No. 1, at 4). Among other forms of relief, Plaintiff requests that the Court award him more than four hundred million dollars in damages, a new house built on forty acres of land, and an annual "Leadership Legacy Award given in [his] name for Dedication of Service and exposing this Conspiracy." (Doc. No. 1, at 6). In support of his Complaint, Plaintiff has attached (1) the Final Agency Decision by the U.S. Department of Transportation ("DOT") from his Equal Employment Opportunity ("EEO") complaint in which the agency found that Mr. Ash suffered no discrimination as to nine alleged incidents (Doc. No. 1, at 7-15), and (2) a short statement of the facts of this case alleging that:

> The Office of Accountability took extreme measures to Avoid Acknowledgement of Whistleblower Violations that were exposed in the agency's own Report of Investigation. For ex. ROI Pg 422 of 663 HR Director states, none of my allegations were supported. However, ROI Pg 642 of 663 states: No Investigation was conducted? All allegations were dismissed based on TIMELINESS? However, ROI Pg 72 of 663 states TIMELINESS: N/A. Finally, Pg 2 of the Final Agency Decision, U.S. Supreme Court states: Reprisal Cases shall not be time barred, Conspiracy?

(Doc. No. 1, at 5). This case was transferred to the Western District of Oklahoma (*See* Doc. No. 21). Defendants move to dismiss all claims. (*See* Doc. No. 29).

At the outset, the Court notes that Plaintiff has identified four Defendants—one by name, the remainder by email address or office title—without specifying the capacities in which they are sued. (*See* Doc. No. 1, at 2). After examining the course of proceedings and type of relief requested, the Court finds that Plaintiff intended to sue Pete Buttigieg (Secretary of the DOT), "DOCR-EEOC-HearingandAppealCorrespondence@dot.gov," the "Employment and Labor Law Division, AGC-100," and the "Office of Personnel Management" in their official capacities.

(Doc. No. 1, at 2); *see Kolar v. Sangamon Cnty. of State of Ill.*, 756 F.2d 564, 568–69 (7th Cir. 1985) ("If a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities, he should expressly state so in the complaint.") (internal citations omitted). The fact that three of the four Defendants were unidentified by name suggests an intent to sue them in their official capacities. Moreover, there appears to be no evidence implying that Pete Buttigieg—the only Defendant identified by name—has any knowledge or personal involvement in this matter. Accordingly, the Court construes this lawsuit as proceeding against Defendants solely in their official capacities.

**\*2** In support of his Complaint, Plaintiff cites to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985; conspiracy under 18 U.S.C. § 371; the No FEAR Act, 5 U.S.C. § 2301; the Federal Employees' Compensation Act ("FECA"); the Veterans Employment Opportunities Act ("VEOA"), 5 U.S.C. §§ 3300a-3300c; Title VII of the Civil Rights Act of 1964 ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"); and the Age Discrimination in Employment Act of 1987 ("ADEA"). (Doc. No. 1, at 3). Defendants seek dismissal of all claims asserting a variety of arguments. [2]

### I. Sovereign Immunity

Claims brought under RICO and 42 U.S.C. § 1985(3) for damages against government officials require a waiver of sovereign immunity. *See Land v. Dollar*, 330 U.S. 731, 738 (1947) (stating that a suit is against the sovereign, and thus barred, if "the judgment sought would expend itself on the public treasury or domain"). This is because a claim against a federal officer in his official capacity "is really a claim against the government that employs that officer." *Strepka v. Miller*, 28 F. App'x 823, 828 (10th Cir. 2001) (citing *Myers v. Okla. County Bd. of County Com'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

#### a. Racketeer Influenced and Corrupt Organizations Act (RICO)

To bring a civil claim against a federal agency under RICO, the United States must agree to waive sovereign immunity. *See, e.g., Hoffmeister v. United Student Aid Funds, Inc.*, 818 F. App'x 802, 807 (10th Cir. 2020) ("[W]e've held that RICO did not expressly waive sovereign immunity.") (citing *Weaver v. United States*, 98 F.3d 518, 520 & n.2 (10th Cir. 1996) (concluding that RICO did not expressly waive sovereign immunity)). Plaintiff incorrectly asserts that Defendants have "claim[ed] RICO ... should be dismissed for lack of Subject Matter Jurisdiction." (Doc. No. 30, at 8; Doc. No. 33, at 4). Defendants' argument rests on sovereign immunity, not subject-matter jurisdiction. (*See* Doc. No. 29, at 4-5). Plaintiff has provided no evidence to suggest that the United States has waived sovereign immunity as to his RICO claim. Accordingly, the Court dismisses his RICO claims with prejudice for failure to plead a waiver of sovereign immunity.

#### b. Conspiracy under 42 U.S.C. § 1985(3)

Individuals injured by a conspiracy have a private right of action to recover damages under 42 U.S.C. § 1985(3). To successfully bring a § 1985(3) claim for damages against a government officer in his official capacity, sovereign immunity must be waived. *See Fay v. United States*, 389 F App'x 802, 803-04 (10th Cir. 2010) (stating that claims under § 1985 "are barred by sovereign immunity.") (citations omitted). Furthermore, the claimant is required to "allege that defendants conspired to deprive him of equal protection or equal privileges and immunities." *Strepka*, 28 F. App'x at 829. These claims "cannot stand on 'vague and conclusory allegations'; but rather, 'must be pled with some degree of specificity.' " *O'Connor v. St. John's College*, 290 F. App'x 137, 141 (10th Cir. 2008) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007)).

In the present matter, Mr. Ash alleges that he is the victim of a conspiracy. (Doc. No. 1, at 3-6). His claims are based on: (1) a DOT Report allegedly confirming that his allegations of discrimination were never investigated; and (2) the DOT's decision to dismiss several allegations of discrimination for

exceeding statutory time limits. (Doc. No. 1, at 5). Not only does Plaintiff fail to plead a waiver of the United States' sovereign immunity, but he neglects to allege involvement by any Defendant in the claimed conspiracy. Although he cites discrimination based on race, color, gender/sex, age, and disability, he fails to sufficiently allege race or class-based animus on the part of the DOT or its employees. (Doc. No. 1, at 4-5). The fact that Mr. Ash's alleged offenders were "All White" and "All Women" is not sufficient to establish a conspiracy to discriminate against him based on his color, gender, or sex. (Doc. No. 1, at 4). Additionally, the "KKK Issue[,]" cited as the basis of his racial discrimination claim, is offered without explanation.[3] (Doc. No. 1, at 4). In short, the United States has not waived sovereign immunity, and Plaintiff's claims are conclusory and lack specificity. Accordingly, his conspiracy claims under ⚑ 42 U.S.C. § 1985(3) are dismissed with prejudice.[4]

## II. Failure to Plead a Cause of Action

### a. Conspiracy under 18 U.S.C. § 371

**\*3** Citing conspiracy, Plaintiff seeks relief pursuant to 18 U.S.C. § 371. Under § 371, conspiracy to defraud or commit an offense against the United States is punishable by a fine and imprisonment. Section 371 is a criminal statute—it does "not provide for a private right of action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (citing ⚑ *United States v. Claflin*, 97 U.S. 546, 547 (1878) ("That act contemplated a criminal proceeding, and not a civil action.... It is obvious, therefore, that its provisions cannot be enforced by any civil action....") (further citations omitted)). Consequently, Plaintiff's claims under 18 U.S.C. § 371 are dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### b. No FEAR Act

The No FEAR Act holds federal agencies accountable for violations of antidiscrimination and whistleblower protection laws by requiring them to regularly report employment discrimination data. No FEAR Act of 2002, Pub. L. No. 107-174, 116 Stat. 566; *see also* 29 C.F.R. §§ 1614.701-707. The Act does not, however, create a private cause of action or substantive rights for litigants to pursue damages against the federal government, its officers, or employees. *See, e.g.,*

*Glaude v. United States*, 248 F. App'x 175, 177 (Fed. Cir. 2007) ("[The] Act does not create a substantive right for which the government must pay damages...."); *Mallard v. Brennan*, No. 1:14-CV-00342-JAW, 2015 WL 2092545, at \*9 (D. Me. May 5, 2015) ("The cases the Court has found uniformly conclude that the NO FEAR Act does not create any private cause of action or substantive rights.").

To support his claims under the No FEAR Act, Plaintiff cites to the U.S. Equal Employment Opportunity Commission ("EEOC") website which states that the Office of Personnel Management ("OPM") is authorized "to issue rules regarding an agency's obligation to: 1) reimburse the Judgment Fund for payments made to employees, former employees, and applicants, because of actual or alleged violations of Federal antidiscrimination laws, whistleblower protection laws, and retaliation claims."[5] (Doc. No. 30, at 10; Doc. No. 33, at 6-7). This language refers to the OPM's rulemaking authority —it does not recognize a private cause of action under the No FEAR Act. Accordingly, the Court dismisses Plaintiff's No FEAR Act claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### III. Federal Employees' Compensation Act (FECA)

Plaintiff cites FECA, an act providing compensation benefits for work-related injuries or illnesses, as a basis for his employment discrimination claims. ⚑ 5 U.S.C. § 8101 *et seq.* Under FECA, "injured federal employees seeking compensation from the United States must file a written claim with the Secretary of Labor, as provided in ⚑ 5 U.S.C. § 8121." *Wideman v. Watson*, 617 F. App'x 891, 894 (10th Cir. 2015) (emphasis omitted). Congress designated the Secretary of Labor to "administer, and decide all questions arising under, [FECA]." 5 U.S.C. § 8145. Consequently, courts are without jurisdiction to consider the merits of a FECA claim. *See* 5 U.S.C. § 8128; *see also* ⚑ *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage.") (quoting ⚑ *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 780, and n.13 (1985)); *see also* ⚑ *Tippetts v. United States*, 308 F.3d 1091, 1094 (10th Cir. 2002) ("If a claim is covered by the FECA, the court is without jurisdiction to consider its merits.").

**\*4** In a response to a previous motion to dismiss before the United States District Court for the District of Columbia (Doc. No. 17), Mr. Ash attached a "Notice of Decision" in which the Department of Labor ("DOL") denied his claim for compensation because it was "not sufficient to establish that [he] sustained an injury as defined by [FECA]." (Doc. No. 17-1, at 27-32). This Court lacks jurisdiction to review the Secretary of Labor's determination of Mr. Ash's FECA coverage. Thus, the Court dismisses Plaintiff's claims under FECA with prejudice for lack of jurisdiction.

#### IV. Veterans Employment Opportunities Act (VEOA)

The VEOA provides certain preferences to veterans seeking federal employment and a method for redress when preference rights have been violated in hiring decisions by the federal government. *See* 5 U.S.C. § 3330a; *Kirkendall v. Dep't of Army*, 479 F.3d 830, 837 (Fed. Cir. 2007). Individuals who may qualify as "preference eligible" include: (1) veterans who served on active duty during a war and were honorably discharged from the armed forces; (2) disabled veterans; and (3) the mother or spouse of certain veterans. *See* 5 U.S.C. § 2108.

Under the VEOA, a complainant must first exhaust his administrative remedies within the DOL before he may file an appeal with the Merit Systems Protection Board (MSPB). 5 U.S.C. § 3330a(d)(1). After appealing to the MSPB, § 3330b "allows a preference eligible person, '[i]n lieu of continuing the administrative redress procedure provided under section 3330a(d) ... [to] elect, in accordance with this section, to terminate those administrative proceedings and file an action with the appropriate United States district court not later than 60 days after the date of the election.' " *Conyers v. Rossides*, 558 F.3d 137, 149 (2d Cir. 2009) (quoting 5 U.S.C. § 3330b(a)). The complainant may not make such an election either "(1) before the 121st day after the date on which the appeal is filed with the Merit Systems Protection Board under section 3330a(d); or (2) after the Merit Systems Protection Board has issued a judicially reviewable decision on the merits of the appeal." 5 U.S.C. § 3330b(b).

Here, Plaintiff's claims under the VEOA fail for several reasons. First, he has not alleged that after leaving the FAA, he applied for any federal government position.[6] Second, he has not established that he is "preference eligible" under the VEOA. Third, he has not demonstrated that he exhausted his administrative remedies within the DOL, filed an appeal with the MSPB, and then elected to terminate that appeal before bringing his VEOA claim in federal court in accordance with 5 U.S.C. § 3330b(b).[7] Accordingly, the Court finds that Plaintiff has not exhausted his administrative remedies under the VEOA and dismisses his VEOA claims with prejudice for lack of jurisdiction. Furthermore, even if he had exhausted his administrative remedies, Plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

#### V. Title VII, the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA)

**\*5** Plaintiff claims he was the victim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, the ADA, and the ADEA. (Doc. No. 1, at 3). Title VII prohibits employment discrimination "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The ADA and ADEA forbid discrimination based on disabilities and age, respectively. At the outset, the Court notes that Plaintiff's discrimination claim under the ADA is misguided because federal employees are "expressly excluded from coverage under the ADA." *Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020) (citing 42 U.S.C. § 12111(5)); *see Vidacak v. Potter*, 81 F. App'x 721, 723 (10th Cir. 2003) (holding that "the Rehabilitation Act is the exclusive remedy for [a United States Postal Service employee's] claim of disability discrimination."). Thus, in construing Plaintiff's *pro se* filings liberally, the Court reads Mr. Ash's ADA claims as Rehabilitation Act claims. The Rehabilitation Act maintains the same "substantive standards" as the ADA "for determining whether an individual is disabled." *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 n.2 (10th Cir. 2012). "[D]ecisions under both Acts apply interchangeably." *Vidacak*, 81 F. App'x at 723 (citing *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997)).

To bring a civil action under Title VII or the Rehabilitation Act, federal employees "must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007)); *see also Ransom v.*

*U.S. Postal Service*, 170 F. App'x 525, 527 (10th Cir. 2006) ("Federal courts do not have jurisdiction to review Title VII and ADA claims not exhausted administratively.") (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004)). Unlike Title VII or the Rehabilitation Act, a federal employee seeking to assert an age discrimination claim has the option to proceed via the EEOC's administrative process or "present the merits of his claim to a federal court in the first instance" by suing under the ADEA. *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5–6 (1991). To sue under the ADEA, a claimant must provide the EEOC at least thirty days' notice of his intent to sue, and the alleged discriminatory incident must have occurred within 180 days of that notification. 29 C.F.R. § 1614.201. Here, Plaintiff chose to first pursue his age discrimination claims via the EEOC's administrative process.

The administrative process requires federal employees to " 'initiate contact' with an Equal Employment Opportunity counselor at [their] agency 'within 45 days of the date of the matter alleged to be discriminatory' " before suing for employment discrimination or retaliation. *Green v. Brennan*, 578 U.S. 547, 549-50 (2016) (quoting 29 CFR § 1614.105(a)(1)); *see also Hickey*, 969 F.3d at 1124 (affirming dismissal of plaintiff's Title VII claims for "fail[ure] to initiate contact with an EEO counselor within forty-five days" of the discrete action of alleged discrimination). When an employee "resigns in the face of intolerable discrimination ... the 45-day clock for a constructive discharge begins running only after the employee resigns" beginning "when the employee gives notice of his resignation, not on the effective date of that resignation." *Green*, 578 U.S. at 550, 564.

Although failure to exhaust administrative remedies "does not bar a federal court from assuming jurisdiction over a claim," courts "must enforce this exhaustion requirement if the employer properly raises it" as an affirmative defense. *Hickey*, 969 F.3d at 1118 (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018)) (citations omitted). In these instances, "equitable doctrines such as tolling or estoppel ... are to be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)) (*per curiam*) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

**\*6** Attached to Plaintiff's Complaint is the DOT's Final Agency Decision from his EEO complaint containing nine separate incidents of alleged discrimination and harassment which the Court construes as the basis for his Title VII, Rehabilitation Act, and ADEA claims herein. (Doc. No. 1, at 7-15). A finding of "no discrimination" was made by the agency as to each allegation. (Doc. No. 1, at 13). Mr. Ash claims he was subjected to discrimination and harassment when:

1. On or about January 2016, his supervisor stuck her tongue out in a sexual manner during an office party.

2. On or about September 2017, management failed to take appropriate action when he complained of a new office policy during an office meeting.

3. On September 29, 2017, his leave request was denied.

4. On or about October 3, 2017, management failed to take appropriate action when a coworker (initials L.M.) barged into the supervisor's office while he and the supervisor were meeting.

5. On or about May 2018, management failed to take appropriate action when coworker L.M. barged in late while he was conducting a student orientation and took over the presentation.

6. On or about October 2018, during an office meeting, his former supervisor (initials J.W.) pretended to skip him after asking if anyone had questions, which prompted laughter from the other employees.

7. In December 2018, he retired from the Agency and was denied social security and disability, based on false statements.

8. In September 2019, he was not selected for at least fifteen to twenty positions for which he applied.

9. On September 14, 2019, he learned that J.W. provided false statements in relation to his Worker's Compensation, that resulted in the request being denied.

(Doc. No. 1, at 7-8). [8]

**a. Incidents One through Seven**

Defendants contend that because Plaintiff contacted an EEO counselor on September 16, 2019, "he may only proceed in this litigation with discrete actions that occurred within a 45-day window from August 2, 2019, to September 16, 2019." (Doc. No. 29, at 12). Seven of Plaintiff's nine alleged incidents of discrimination occurred prior to August 2, 2019. Mr. Ash has provided no explanation as to why he failed to bring these allegations within the forty-five-day time limit for initiating contact with an EEO counselor which would justify an extension of time under 29 C.F.R. § 1614.105(a)(2).

Furthermore, Plaintiff has not established that the alleged incidents occurring prior to August 2, 2019, were "part of the same actionable hostile work environment practice" as those incidents allegedly occurring afterward. *Morgan*, 536 U.S. at 120; *see also Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308-14 (10th Cir. 2005) (affirming summary judgment, in part, because plaintiff was not subject to a hostile work environment). "Hostile environment claims are different in kind from discrete acts" because they involve "repeated conduct." *Morgan*, 536 U.S. at 115. In determining whether Incidents One through Seven are sufficiently related to Incidents Eight and Nine so as to constitute a hostile work environment, the Court may examine whether the "pre—and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120 (internal quotation marks omitted). Mr. Ash claims that in September 2019, "he was not selected for at least fifteen to twenty positions for which he applied" (Incident Eight). (Doc. No. 1, at 8). The Court cannot grasp—and Mr. Ash does not explain—how his supposed non-selections for employment in September 2019 relate to alleged Incidents One through Seven occurring at the FAA from 2016 through 2018.

**\*7** In Incident Nine, Mr. Ash claims that on September 14, 2019, "he learned that J.W. provided false statements in relation to his Worker's Compensation, that resulted in the request being denied." (Doc. No. 1, at 8). While these false statements might conceivably connect Incident Nine to Incident Seven, in which Plaintiff claims he was denied Social Security disability benefits "based on false statements," Mr. Ash neglects to clarify the connection. (Doc. No. 1, at 8). For example, he does not allege that the same perpetrator, Josephin Williams, provided false statements in both incidents, or that the false statements were even related. In short, Plaintiff has not demonstrated that the

alleged pre-limitations period incidents (Incidents Eight and Nine), were part of a continuing discriminatory practice related to the post-limitations period incidents (Incidents One through Seven) occurring before August 2, 2019. Accordingly, Mr. Ash's untimely Title VII, Rehabilitation Act, and age discrimination claims based on Incidents One through Seven—brought under the EEOC administrative process—are dismissed with prejudice for failure to comply with the statutorily mandated forty-five-day window for initiating contact with an EEO counselor. Mr. Ash's claims under the ADEA are dismissed with prejudice, pursuant to 29 C.F.R. § 1614.201, for failure to notify the EEOC of his intent to sue in federal court within 180 days of the alleged act of age discrimination.

**b. Incident Eight**

Mr. Ash claims that "he was not selected for at least fifteen to twenty positions for which he applied" in the private sector in September 2019 because of alleged "poor references" from "the Agency." (Doc. No. 1, at 10). He does not provide any evidence, however, suggesting that the DOT—or any of its employees—was ever contacted regarding his job applications. Mr. Ash resigned his position with the FAA on or about December 2018—he was not terminated. Not only does Incident Eight make no reference to Mr. Ash's race, color, religion, sex, national origin, disabilities, or age, *none* of the nine alleged incidents described in the EEO complaint make such a reference.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Absent additional facts, the Court dismisses with prejudice Plaintiff's Title VII, Rehabilitation Act, and age-discrimination claims based on Incident Eight for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Mr. Ash's claims under the ADEA are dismissed with prejudice pursuant to 29 C.F.R. § 1614.201 for failure to notify the EEOC of his intent to sue in federal court within 180 days of the alleged act of age discrimination.

**c. Incident Nine**

In Incident Nine, Plaintiff alleges that he was denied workers' compensation due to false statements made by his supervisor, Josephin Williams. (Doc. No. 1, at 8). According to the Final Agency Decision, Plaintiff asserted in his EEO complaint that Ms. Williams falsely "told the Department of Labor (DOL) and the Office of Personnel Management (OMP) that she was unaware of his medical condition." (Doc. No. 1, at 11). As discussed previously, FECA governs workers' compensation claims for federal employees. 5 U.S.C. § 8101 *et seq.* Under FECA, the Secretary of Labor has exclusive jurisdiction, and his denial of payment is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Consequently, the Court dismisses Plaintiff's Incident Nine claim with prejudice for lack of jurisdiction.

### Conclusion

As set forth above, Plaintiff's claims are dismissed with prejudice. Defendants' Motion to Dismiss (Doc. No. 29) is GRANTED. All subsequently filed motions (Doc. Nos. 30-36) are DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 24th day of October 2022.

### All Citations

Slip Copy, 2022 WL 17225732

---

### Footnotes

1    Because Mr. Ash is a *pro se* litigant, the Court affords his materials a liberal construction, but it does not act as his advocate. *See* United States v. Pinson, 584 F.3d 972, 975 (10th Cir. 2009).

2    The Court groups and addresses Plaintiff's claims in the following order to provide clarity.

3    The Court notes that Plaintiff attached a Department of Labor (DOL) "Notice of Decision" in a response to a prior motion to dismiss before the United States District Court for the District of Columbia (Doc. No. 17) in which the DOL found that Plaintiff's allegation of seeing "someone drive through one of the gates at the Aeronautical Center with a license plate inscribed, 'TX KKK' " did not occur. (Doc. No. 17-1, at 29). This Court, however, has not been provided an explanation as to (1) whether Mr. Ash is referring to the same event in the Complaint, and, if so, (2) how Mr. Ash was discriminated against by the FAA as a result of this alleged incident.

4    Defendants argue that Plaintiff is preempted from stating a claim under § 1985(3) because his employment discrimination claims must proceed via Title VII. (*See* Doc. No. 29, at 8). The Court does not address the merits of this argument as Plaintiff's § 1985(3) claim is barred for failure to plead a waiver of sovereign immunity.

5    Questions and Answers: No FEAR Act, https://www.eeoc.gov/no-fear/questions-and-answers-no-fear-act (last visited Oct. 21, 2022).

6    As noted in the DOT's Final Agency Decision, Plaintiff "explain[ed] that he retired from the Agency in December 2018 and that the September 2019 non-selections were for teaching, coaching and administrative jobs with the 'YMCA.' " (Doc. No. 1, at 10). In a response to a motion to dismiss before the United States District Court for the District of Columbia (Doc. No. 17), Plaintiff included generic emails from the Oklahoma City Thunder basketball organization (Doc. No. 17-1, at 129), the YMCA (Doc. No. 17-1, at 131), and Moore

Public Schools (Doc. No. 17-1, at 133) thanking him for applying to various positions. Mr. Ash has not provided this Court with evidence suggesting that any of these jobs fall under the purview of the VEOA.

7  The Court acknowledges Plaintiff's argument that "the FAA's DOCR dismissed my case by stating it should be heard by the MSPB, with full knowledge that the MSPB had dismissed my case by stating it should be heard by the EEOC." (Doc. No. 30, at 8; Doc. No. 33, at 4), however, the Court is unaware of any evidence suggesting that the MSPB ever heard, or dismissed, his case.

8  Based on the DOT's Final Agency Decision, the Court infers that Plaintiff's former supervisor "J.W." is a reference to Ms. Josephin Williams. (*See* Doc. No. 1, at 10). The Court is unable to ascertain the identity of "L.M." who is cited in Incidents Four and Five. Neither of these individuals are named as Defendants in this lawsuit.

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.